**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

```
HELMING & CO., P.C.,          )
            Plaintiff,        )
                              )
       v.                     )  C.A. No. 13-cv-12760-MAP
                              )
RTR TECHNOLOGIES, INC.,       )
       Defendant.             )
```

**MEMORANDUM AND ORDER RE:**
**DEFENDANT'S MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND**
**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**
**(Dkt. Nos. 12 & 20)**

**January 6, 2015**

**PONSOR, U.S.D.J.**

## I. INTRODUCTION

**On September 29, 2014, the court denied, in summary**

**form, Defendant's Motion to Dismiss or, in the Alternative,**

**for Summary Judgment (Dkt. No. 12) and allowed Plaintiff's**

**Cross-Motion for Summary Judgment (Dkt. No. 20). (Mem. &**

**Order 3, Dkt. No. 35.) This memorandum will set forth the**

**court's rationale for these rulings in more detail.[1]**

---

**[1]    As will be seen below, this action arises from**
**previous litigation in which the same parties played opposite**

## II. **FACTS**[2]

**Helming & Co., P.C. ("H&C"), a Connecticut business,
provided tax, business, and accounting services, including
turnaround consulting services. RTR Technologies,
Inc.("RTR"), a New York corporation with its principal place
of business in Stockbridge, Massachusetts, supplied heating
products and systems for rail and mass transit. The sole
owner and president of RTR was Rosalie Berger; her husband,
Craig Berger, was an employee of RTR.**

**In 2002, RTR applied for and received from the Small
Business Administration ("SBA") an Economic Injury Disaster
Loan in the amount of $687,5000. In 2003, after failing to
make payments on its loan, RTR "entered into a forbearance
agreement with the SBA that required [RTR] to employ a**

---

**roles. This memorandum will therefore refer to Plaintiff and
Defendant by their abbreviated business names in order to
avoid confusion.**

[2] **As required at the summary judgment stage, the facts
are recited in the light most favorable to the non-moving
party. RTR Techs., Inc. v. Helming, 707 F.3d 84, 87 (1st Cir.
2013). Unless otherwise noted, the facts are drawn from
Defendant's Statement of Material Facts (Dkt. No. 14),
Defendant's Affidavit in Support (Dkt. No. 15), Plaintiff's
Supplemental Statement of Material Facts (Dkt. No. 22), and
Defendant's Statement of Material Facts (Dkt. No. 29), along
with the documents referenced therein.**

turnaround manager to help it recover from its financial difficulties." RTR Techs., Inc. v. Helming, 815 F. Supp. 2d 411, 416 (D. Mass. 2011). The first company hired by RTR discovered that, from 1994 until 2003, Ms. Berger had withdrawn from RTR's accounts sums totaling over $1 million. RTR's balance sheets carried these withdrawals as "loans to officer." Id. This first turnaround company identified these "loan to officer" transactions as compromising the financial health of the company and characterized Ms. Berger's management practices as a liability to RTR. Perhaps not surprisingly, Ms. Berger terminated RTR's contract with the first turnaround company and, thereafter, hired H&C to perform the same services. Id. at 417.

On September 29, 2003, RTR and H&C entered into an Engagement Agreement, which Ms. Berger signed in her capacity as president of RTR. (Engagement Agreement, Dkt. No. 1, Attach. 5, Ex. 1 (hereinafter "Agreement").) The contract contained the following indemnification provision:

[RTR] ... agree[s] to indemnify and hold harmless
[H&C] to the full extent lawful against any and
all losses, claims, damages, liabilities and cost
and all actions in respect thereof and any
reasonable legal or other expenses in giving
testimony or furnishing documents in response to a

-3-

**subpoena or otherwise including the cost of investigating, preparing or defending any such action or claim, whether or not in connection with litigation in which H&C is a party, as and when incurred, directly or indirectly, caused by, relating to, based upon or <u>arising out of</u> (a) any transactions (as contemplated by the letter agreement dated as of September 25, 2003, as it may be amended from time to time...), or (b) H&C acting for [RTR] in the manner authorized and described in the Agreement including, without limitation, any act or omission by [RTR] in connection with its acceptance of or performance or non-performance of its obligations under the Agreement; provided, however, such indemnity agreement shall not apply to any such loss, claim, damage, liability or cost to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence, willful misconduct or unlawful activities of H&C. [RTR] also agrees that <u>H&C shall not have any liability</u> (whether direct or indirect, in contract or tort or otherwise) <u>to [RTR] for or in connection with the engagement of H&C, except for any such liability for losses, claims, damages, liabilities or expenses that is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from H&C's gross negligence, willful misconduct or unlawful activities</u>.**

(<u>Id.</u> at 12 (App'x B) (emphasis added).)  Additionally, the

Agreement stated that Connecticut law would govern.  (<u>Id.</u> at

8.)

Pursuant to the Agreement, H&C performed management

advisory services for RTR, including assessing RTR's

-4-

business operations and financial condition and initiating a
management action plan.  (Id. at 2.)  H&C's initial analysis
was to include reviewing the work of the previous turnaround
company to ease the transition between service contracts.
(Id. at 3.)  H&C also pledged to review and validate the
integrity of RTR's accounting measurements and forecasts.
(Id. at 3 & 4.)  If requested, H&C also agreed to "render
such other financial advisory services under separate
written agreement(s)."  (Id. at 5.)

     Part of H&C's review of RTR included an evaluation of
the "loan to officer" transactions previously identified by
the first turnaround company as a "burden on RTR resources."
RTR Techs., Inc., 815 F. Supp. 2d at 416.  After evaluating
RTR's balance sheets and the Berger's personal finances, H&C
concluded that the payments carried on RTR's books as "loan
to officer" needed to be reclassified as income to the
Bergers.  Id. at 417.  The parties apparently recognized
that this process of reclassification would have tax
ramifications for the Bergers.  In February 2005, the
parties signed another agreement wherein H&C agreed to
provide tax-related services, including the preparation of

-5-

amended tax returns.  Id. at 417 n.2.

In November 2005, the parties signed a "Side letter
dealing with Advances/Loans to Related Parties," in which
H&C outlined its recommendations for correcting errors in
RTR's books and updating its tax returns.  (Dkt. No. 23,
Attach. 3 at 44, Ex. D.)  This side letter did not contain
an indemnification provision.  Following H&C's advice, RTR
and the Bergers authorized H&C to amend their tax returns to
reflect the previous "loan to officer" transfers as income
to the Bergers.  This change resulted in greater tax
liability for the Bergers.  Id. at 418.  In 2008, the
parties ended their business relationship.

On October 9, 2009, RTR and the Bergers individually
filed suit against H&C, alleging inter alia, professional
malpractice, breach of contract, and breach of fiduciary
duties, including allegations of gross negligence and/or
willful misconduct on the part of H&C.  See RTR
Technologies, Inc. v. Helming, C.A. No. 3:09-cv-30189
(hereafter "underlying" or "prior" action).[3]  (Dkt. No. 1,

---

[3]  RTR's lawsuit was originally filed in state court but
removed by H&C to this court.

-6-

Attach. 6, Ex. 2, Compl. ¶¶ 17, 19, & 24.)  On September 19,
2011, the court granted summary judgment in favor of H&C in
this underlying action, based on RTR's "failure to file the
complaint within the prescribed statutory period, to produce
evidence of damages, and to demonstrate that [H&C's] advice
was negligent."  RTR Techs., Inc., 815 F. Supp. 2d at 415,
aff'd, 707 F.3d 84 (1st Cir. 2013).  In its analysis, the
court concluded that H&C's advice to RTR and the Bergers was
correct "as a matter of prudence, ethics, and law."  Id. at
427.  Moreover, the court observed that RTR's claim against
H&C for negligence bordered on being "ludicrous."  Id. at
434.

        After the court's ruling, H&C moved for an award of
statutory costs totaling $15,341.36, for attorneys' fees
totaling $154,824.50, and for non-statutory costs totaling
$37,664.47, based in part on the court's inherent power to
"award such fees when a party has 'acted in bad faith,
vexatiously, wantonly, or for oppressive reasons.'"  RTR
Techs., Inc., 707 F.3d at 94.  H&C had indicated to RTR
early on in the litigation that it considered itself
entitled to indemnification and cited the Agreement as a

                              -7-

basis for its argument for fees to this court.[4]  RTR also
brought the indemnification provision to the attention of
the court as part of its opposition to H&C's motion for
costs and fees.

Ultimately, the court granted H&C's motion for
statutory costs, totaling $15,341.36, but denied the motion
for attorneys' fees and non-statutory costs.  RTR
Technologies, Inc. v. Helming, 2012 WL 601913 (D. Mass. Feb.
22, 2012), aff'd, 707 F.3d 84 (1st Cir. 2013).  In its order
on the motion, the court stated, "Similarly, the
indemnification provision contained in [H&C's] agreement
with [RTR] might possibly provide the basis for an award of
fees and costs in an independent action, but not as part of
the current motion."  Id. at *2.  The First Circuit's
opinion affirming this court's decision contained no
reference to the indemnification provision.

Thereafter, H&C sent a letter to RTR calling attention
to the First Circuit's ruling affirming the court's order

_____

        [4] By letter dated April 4, 2011, counsel for H&C notified
RTR that it would "seek indemnity for any damages, costs, and
attorneys' fees incurred in defending the claims of Craig and
Rosalie Berger" under the terms of the Agreement.  (Dkt. No.
1, Attach. 7, Ex. 3.)

-8-

for payment of statutory costs. (Dkt. No. 23, Attach. 3 at 46, Ex. E.) In response, RTR sent a letter and a check for $15,341.46 to H&C. The letter stated that the check represented "payment in full of the obligations of [RTR], Rosalie Berger and Craig Berger to [H&C]." (Dkt. No. 15, Attach. 2 at 105, Ex. 12.) Furthermore, the face of the check contained the phrase "full payment and satisfaction." (Id. at 106.) H&C accepted and deposited that check.

On October 31, 2013, H&C filed the current action seeking to recover the costs, attorneys' fees, and expenses incurred in defending the underlying action, as well as those incurred in pursuit of the present action.[5] Count One charges breach of contract based on RTR's prior lawsuit against H&C in contravention of the "hold harmless" terms of the Agreement (Compl. ¶¶ 32-39, Dkt. No. 1); Count Two offers a claim of breach of contract based on RTR's failure to indemnify H&C for the costs of defending the claims brought by the Bergers in the underlying action (id. at ¶¶ 40-45, Dkt. No. 1). On December 20, 2013, RTR moved to

---

[5] H&C alleges that it incurred $256,788.96 in legal fees and unreimbursed costs from investigating and defending the underlying action. (Compl. ¶ 31, Dkt. No. 1.)

-9-

dismiss the current lawsuit for failure to state a claim, or
in the alternative, for summary judgment, relying on the
record from the prior action and the documents regarding its
payment to H&C of the court-ordered statutory costs.  On
January 17, 2014, H&C opposed RTR's motion and filed its own
cross-motion for summary judgment as well.  The court heard
argument on the motions on March 31, 2014, and took them
under advisement.  As noted above, on September 29, 2014,
the court ruled on the motions via a summary order,
promising to follow with a longer memorandum explaining its
rationale in detail.  This is that memorandum.

## III.  DISCUSSION

RTR formally moved under Fed. R. Civ. P. 12(b)(6) to
dismiss H&C's complaint for failure to state a claim upon
which relief could be granted.[6]  However, both parties have

---

[6]  For purposes of a motion to dismiss, the court must
take the allegations in the complaint as true and draw all
reasonable inferences in the plaintiff's favor.  Curran v.
Cousins, 509 F.3d 36, 43 (1st Cir. 2007).  Beyond the
complaint, the court may also consider facts contained in
"documents the authenticity of which are not disputed by the
parties; [in] official public records; [in] documents central
to plaintiff['s] claim; or [in] documents sufficiently
referred to in the complaint."  Watterson v. Page, 987 F.2d 1,
3 (1st Cir. 1993).

also proposed evaluating the parties' arguments under the standard applicable to summary judgment motions. Pursuant to Rule 56, summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions, the court should address each motion separately and draw inferences against each movant in turn. Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997). As the material facts are not in dispute and both parties have submitted extrinsic documents for consideration, the court will evaluate the motions under the summary judgment standard, as the parties suggest. See Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 591 (1st Cir. 1989) (stating that a court may convert a motion to dismiss to one for summary judgment under Rule 56).

The dispute centers primarily on two questions. First, did the indemnification provision of the Agreement protecting H&C apply to the underlying action by RTR against H&C? Second, if so, are H&C's current claims for fees and expenses nonetheless somehow precluded by the underlying action itself? As will be seen below, the provision

-11-

protecting H&C manifestly does apply, and H&C's claims are
not barred by the underlying action.

**A.  The Indemnification Provision**

     RTR presents two reasons why the indemnification
provision of the Agreement does not require it to reimburse
H&C for the costs of either the current action or the
underlying action.  First, RTR argues that under Connecticut
law general indemnification clauses cover only losses from
litigation brought by third parties, not from lawsuits
brought by "first parties," i.e., the parties to the
contract themselves.  Second, RTR argues that the
indemnification provision applies only to the management
advisory services provided by H&C and not to the tax-related
services that, H&C contends, were at the heart of the
underlying action.

     In support of its "third-party/first party" argument
RTR relies primarily on the Supreme Court of Connecticut's
decision in Amoco Oil Co. v. Liberty Auto and Electric Co.,
262 Conn. 142, 148 (2002).  RTR cites Amoco for the
proposition that "an action for indemnification is one in
which one party seeks reimbursement from another party for

-12-

losses incurred in connection with the first party's
liability to a third party." Id. at 148. RTR also cites
some unpublished Connecticut Superior Court decisions that
appear to limit indemnity actions to situations where the
indemnitee becomes obligated to pay damages to a third
party. Conn. Res. Recovery Auth. v. Murtha Cullina, LLP,
2006 WL 1530158 at *3 (Conn. Super. Ct. May 23, 2006);
DeCarlo & Doll, Inc. v. Town of Chester, 2008 WL 4416073 at
*4 (Conn. Super. Ct. Sept. 17, 2008).

   RTR's arguments rely on an overly-broad reading of
Amoco. First, Amoco's holding is qualified by language
making clear that "the concept of indemnity usually
involves" the indemnitee's liability to a third-party.
Amoco, 262 Conn. at 149 (emphasis supplied). The decision
nowhere suggests that an indemnification provision can never
support a claim based upon actionable misconduct by the so-
called "first party."

   Second, the facts in Amoco are entirely different from
the facts underlying the case before this court. In Amoco,
the plaintiff hired the defendant to construct underground
gasoline tanks. More than six years later, the plaintiff

-13-

discovered that one of the tanks was leaking and brought suit. The six-year statute of limitations had run on any claim for breach of contract, so plaintiff anchored its claim on the indemnification provisions of the parties' contract. The Connecticut Supreme Court concluded that plaintiff's claim for losses was "not a claim for indemnification at all, but, rather, a claim for damages for its own losses arising out of [the defendant's] allegedly negligent and improper installation of the tanks." Id. at 151. In other words, plaintiff's lawsuit was, in fact, a claim for breach of contract dressed up as an indemnification action to avoid the statute of limitations problem. Id. at 152.

The case currently before this court is entirely different. H&C is seeking compensation for damages it suffered as a result of the prior, baseless lawsuit that RTR brought against it. The parties' contract included a provision explicitly protecting H&C from any liability to RTR that did not arise from H&C's gross negligence and indemnifying H&C for any damages suffered as a result of any claims brought against H&C for anything other than H&C's

-14-

gross negligence.  Nothing in Amoco suggests that
indemnification would be improper in these very different
circumstances.

The Second Circuit's decision in Rand-Whitney
ContainerBoard Ltd. P'ship v. Town of Montville, 290 Fed.
App'x 430, 433 (2d Cir. 2008) offers no substantial support
for RTR's argument.  In language similar to that used in the
Amoco decision, this decision merely states that under
Connecticut law, phrases such as "indemnification" and "hold
harmless" are "typically interpreted to apply to third-party
claims."  Id. (emphasis added).

The holdings of the various cases cited by RTR are all
anchored on the specific language of the contracts involved
in those cases.  Here, the language of the indemnity clause
is more extensively drawn.  It broadly covers all costs
incurred based on any claim against H&C except those claims
found by a court to have "resulted primarily and directly
from [H&C's own] gross negligence, willful misconduct or
unlawful activities."  (Agreement 12 (App'x B)(emphasis
added).)  Most significantly, the indemnification provision
itself explicitly encompasses "first-party" claims by RTR

-15-

against H&C.  It states that RTR "also agrees that H&C shall
not have any liability (whether direct or indirect, in
contract or tort or otherwise) to [RTR] for or in connection
with the engagement of H&C," except where H&C itself is
found to have committed "gross negligence, willful
misconduct or unlawful activities."  (Agreement 12 (App'x
B).)  Nothing in any of the authorities cited by RTR
describes indemnification language that is so broad and, at
the same time, so directly focused on the relationship
between the contracting parties.

Moreover, even if the court were to construe the
indemnity provision as precluding recovery unless there had
been loss from a third-party suit, H&C has alleged third-
party harm.  Count Two of its complaint sets forth a claim
for breach of contract based on RTR's failure to indemnify
H&C "for the claims brought against it by the Bergers."
(Compl. ¶ 44 at 7, Dkt. No. 1.)  Because the Bergers are
obviously third parties, RTR would be obliged, in any event,
to indemnify and hold harmless H&C for fees and costs

incurred as a result of claims by them.[7]

RTR next argues that the claims from the prior action
arose, not from the Agreement (the first contract between
the parties and the one with the indemnification provision),
but from the second agreement for tax services. RTR points
to the language in the Agreement that specifically states
that any other services, other than management advisory
services, would require separate agreements. RTR maintains
that the prior action arose from the tax and financial
services provided by H&C that were the subject of separate
contracts that, in contrast to the Agreement, lacked
indemnification agreements.

This argument does not survive scrutiny. H&C's
recommendation to RTR that it re-characterize the so called
"loans to officer" so that they appeared as income to the
Bergers, and amend the applicable tax returns accordingly,
arose out of the contract for turnaround services -- that
is, the Agreement. It cannot be disputed that the

_____

[7] RTR makes a cursory argument that, as an S Corporation,
the tax obligations of RTR automatically pass through to the
Bergers and, as a result, the Bergers are somehow in privity
with RTR and do not qualify as third parties. RTR cites no
support for this proposition.

-17-

underlying action grew out RTR's unhappiness with this recommendation and was thus subject to the indemnification clause.

Under Connecticut law, the term "arise out of" is construed broadly. **Misiti, LLC v. Travelers Prop. Cas. Co. of Am.**, 308 Conn. 146, 157-58 (2001) (defining "arise out of" as "connected with, had its origins in, grew out of, flowed from, or was incident to"). The claims advanced in the underlying action were directly attributable -- i.e., they "arose from" -- the services provided by H&C under the Agreement. When RTR engaged the services of H&C, the "loans to officers" had already been identified as a severe drain on the financial well-being of RTR by the first turnaround company. Though the actual paperwork involved in amending RTR's tax return was covered by the second agreement between the parties, the evaluation of the "loans to officer," as well as the resulting recommendation to reclassify them, originated in the Agreement. (Agreement 4 ("H&C will review and facilitate . . . accounting measurement and discuss relevant observations and suggestions with designated Management.").)

-18-

In sum, the indemnification provision of the Agreement is so broad as to encompass not only third-party suits, but first-party suits as well. Moreover, the underlying action "arose from" the relationship established by the Agreement between the parties, which included the indemnification provision. Accordingly, the Agreement obligates RTR to reimburse H&C for the fees and costs incurred in defending the underlying action brought by RTR against H&C and, in addition, the fees and costs incurred in the present action necessarily incurred to obtain those earlier fees and costs.

## B. Effect of the Underlying Action

RTR pursues three arguments based on the underlying action. First, RTR asserts that H&C waived its claims when it failed to bring them as compulsory counterclaims in the prior action. Second, RTR argues that, because this court ruled against H&C's motion for indemnification in the prior action, its current claims are barred by the doctrine of res judicata. Third, RTR contends that, pursuant to the doctrine of accord and satisfaction, its debts to H&C were settled when H&C cashed the check for statutory costs.

Federal Rules of Civil Procedure 13(a) states that

counterclaims must be brought if the claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." RTR cites First Circuit authority to the effect that "if a counterclaim 'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction,' the counterclaim is compulsory and must be raised." In re Iannochino, 242 F.3d 36, 41-42 (1st Cir. 2001). Because the language of the indemnification provision of the Agreement states that RTR was obliged to pay costs arising from their obligation "as and when incurred" (Agreement 12, App'x B), H&C, according to RTR, should have filed a counterclaim in the prior action.

This argument does not hold water. H&C did not "have" its indemnity claim at the time of the prior action. As the Supreme Court has stated, an earlier judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." Lawlor v. Nat'l Screen Serv. Corp.,

349 U.S. 322, 328 (1955). It is generally recognized that "claims for indemnification are generally contingent on the outcome of other claims and thus may not have 'matured' by the time a defendant is required to file its answer." Sov Apex LLC v. Gateway Funding Diversified Mortg. Servs., LP, 09CV11851-NG, 2010 WL 1839417, at \*4 (D. Mass. May 6, 2010). The underlying action by RTR against H&C involved claims of gross negligence and willful misconduct on the part of H&C. If RTR had been successful in these claims, H&C would have had no basis to claim indemnification. Thus, RTR's obligation to indemnify H&C did not arise until after the court issued its decision dismissing the underlying case. (Agreement 12, App'x B ("H&C shall not have any liability ... to [RTR] for or in connection with the engagement of H&C, except for any such liability . . . that is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from H&C's gross negligence, willful misconduct or unlawful activities.").) Accordingly, H&C could not have brought this action until now, and its claims cannot be dismissed on the ground that they should have been included

as part of the prior litigation.[8]

RTR'S res judicata is similarly unavailing. "Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties from relitigating claims that were raised or could have been raised in that action." Maher v. GSI Lumonics, Inc., 433 F.3d 123, 126 (1st Cir. 2005) (quoting Porn v. Nat'l Grange Mut. Ins. Co., 93 F.3d 31, 34 (1st Cir.1996)). For res judicata to apply, three factors must be present: (1) the prior action must have resulted in a final judgment; (2) the prior action and the current action must assert identical claims; and (3) the prior action and the current action must have identical parties. Id. at 127. RTR argues that, as H&C dedicated five pages of its memorandum in support of its motion for attorneys' fees to the indemnification provision of the Agreement and that motion was denied and affirmed on appeal,

_____

[8] Ironically, in the underlying action, RTR opposed H&C's claim for indemnification on the ground that it was premature. This court eventually agreed. Now RTR contends that pursuit of the indemnification claim in the underlying action was not premature, but mandatory. Because H&C is entitled to judgment on substantive grounds, it is not necessary for the court to address H&C's argument that RTR should be deemed estopped from taking these inconsistent positions.

**res judicata bars H&C's claims.**

Again, this argument is specious.  The principles of

res judicata simply do not apply here.

> [W]here the second action between the same parties
> is upon a different cause or demand, the principle
> of res judicata is applied much more narrowly.  In
> this situation, the judgment in the prior action
> operates as an estoppel, not as to matters which
> might have been litigated and determined, but
> "only as to those matters in issue or points
> controverted, upon the determination of which the
> finding or verdict was rendered."

C.I.R. v. Sunnen, 333 U.S. 591, 597-98 (1948); see Pike v.

Freeman, 266 F.3d 78, 92 (2d Cir. 2001) (Sotomayor, J.)

(stating that the indemnification claim "did not arise until

the [arbitration award] was granted and the district court

proceedings were prosecuted").  The language of the

indemnification provision specifically provides that is it

inapplicable when a court of competent jurisdiction

determines that H&C's conduct was grossly negligent.  As the

prior action involved claims of gross negligence brought by

RTR against H&C, RTR's obligations under the contract would

not be clear until a final judgment issued in the prior

action.  Accordingly, H&C's claims for indemnification did

not ripen until final judgment in the prior action.  As with

the compulsory counterclaim analysis, until the prior action reached a final judgment in which H&C was not found to have engaged in grossly negligent conduct, H&C could not have brought this current action for indemnification.

Further undermining RTR's arguments for res judicata or claim preclusion, this court explicitly noted in its decision on attorneys' fees in the prior action that it was not considering H&C's indemnification arguments. RTR Techs., Inc., 2012 WL 601913, at *2 ("Similarly, the indemnification provision contained in RTR's agreement with H&C might possibly provide the basis for an award of fees and costs in an independent action, but not as part of the current motion."). Once more, H&C objects to RTR trying to have it both ways, insisting in the prior action that H&C's indemnity claims could not be addressed until final judgment and then arguing in the current case that res judicata precludes H&C's claim now.

Finally, RTR's third argument asserts that, under the doctrine of accord and satisfaction, H&C's claims were extinguished when it accepted and deposited RTR's check. As noted above, after the First Circuit affirmed this court's

-24-

award of statutory fees, RTR sent H&C a check for $15,341.46 with the words "full payment and satisfaction," accompanied by a letter stating that the check represented "payment in full" of the RTR's obligations to H&C. According to RTR, once H&C accepted and cashed that check, its claim for indemnity was extinguished. H&C counters that the acceptance of a court-ordered payment cannot operate as a release of claims not yet addressed by that court.

H&C is clearly correct. To begin with, "an accord and satisfaction requires a voluntary, mutually assented to exchange of money for a release." Malave v. Carney Hosp., 170 F.3d 217, 222 (1st Cir. 1999). As H&C points out, there is no evidence before the court of voluntariness or mutuality. Equally importantly, there is no evidence of consideration. Schoonmaker v. Lawrence Brunoli, Inc., 265 Conn. 210, 277, 828 (2003)("Upon acceptance of the offer of accord, the creditor's receipt of the promised payment discharges the underlying debt and bars any further claim relating thereto, if the contract is supported by consideration.") (italicization and quotations omitted). Furthermore, an accord and satisfaction reflects an

agreement reached on a disputed amount.  Id.  That is also
not the case here.  The court-ordered amount of the check
cannot be characterized as a "disputed" amount.  There has
been no contact, much less negotiation, between the parties
since the prior action.  Thus, H&C's cashing of the check
paid to it pursuant to a court order on statutory costs
cannot constitute an accord and satisfaction on the
indemnification issue.

In sum, the indemnity provision in the Agreement
required RTR to cover the attorneys' fees and unreimbursed
costs incurred by H&C in defending itself against the claims
in the underlying action brought by both RTR, a first party,
and the Bergers, a third party.  Furthermore, the indemnity
claims were not compulsory counterclaims, as they did not
ripen until after a final, nonappealable decision was
reached; neither are the claims barred by the doctrine of
res judicata, as the court expressly stated it was not
considering them.  Accordingly, H&C is entitled to summary
judgment on both counts.

## IV.  CONCLUSION

For the forgoing reasons, on September 29, 2014, the

court DENIED Defendant's Motion to Dismiss (Dkt. No. 12) and

ALLOWED Plaintiff's Cross-Motion for Summary Judgment (Dkt.

No. 20). On or before February 5, 2015, counsel for H&C

shall submit to the court supplemental materials specifying

the exact amount of fees and expenses incurred in

prosecuting this action, as well as for the underlying one,

along with affidavits attesting to the reasonableness of the

hourly rates charged by its attorneys. Thereafter, counsel

for RTR shall respond on or before March 9, 2015. The court

will consider these submissions on the papers and proceed to

enter final judgment.

        It is So Ordered.

                                     **MICHAEL A. PONSOR**
                                     **U. S. District Judge**